IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Bushra Ghazi,            ) | C/A No. 0:07-2976-GRA-PJG |
|             ) | |
|     Plaintiff,    ) | |
|             ) | **REPORT AND RECOMMENDATION** |
|   v.          ) | |
|             ) | |
| Commissioner of Social Security,  ) | |
|             ) | |
|     Defendant.    ) | |
| _____ ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Bushra Ghazi ("Ghazi"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On June 14, 2004, Ghazi applied for DIB beginning May 2, 2002. Ghazi's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held October 17, 2006, at which Ghazi appeared and testified, the ALJ issued a decision dated December 29, 2006 denying benefits and finding that Ghazi was not disabled as defined by the Social Security Act. The ALJ, after hearing the testimony of a vocational expert, concluded that there are jobs in significant number in the national economy which Ghazi can perform. Ghazi was 47 years old at the time of the ALJ's decision. She has a high school education (in her native country of Pakistan) and has performed relevant work in the past as a sewing machine operator, weaver, and cook. Ghazi alleges disability since May 2, 2002 due to chronic back

pain, numbness and tingling in her lower extremities, a depressive disorder, and carpal tunnel syndrome.

The ALJ found (Tr. 13-19):

1. The claimant last met the insured status requirements of the Social Security Act on March 31, 2005.

2. The claimant has not engaged in substantial gainful activity since May 2, 2002, the alleged onset date (20 CFR 404.1520(b) and 404.1571 et seq.).

3. The claimant has the following severe impairments: lower back pain, anemia, and depression (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. [T]he claimant has the following residual functional capacity to perform sedentary work with restrictions that require simple, routine work; a low stress environment (defined as requiring few decisions); no more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; and no good communication skills in English.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 1, 1959, and was 43 years old on the alleged disability onset date, and she is presently 47 years old, which is defined as a younger individual (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR[1] 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

[1] Social Security Ruling.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from May 2, 2002, through the date of this decision (20 CFR 404.1520(g).

On June 29, 2007, the Appeals Council denied Ghazi's request for review, making the decision of the ALJ the final action of the Commissioner. Ghazi filed this action on August 29, 2007.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (5), pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a "severe" impairment; (3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the listings"), and is thus presumptively disabled; (4) whether the claimant can perform her past relevant work; and (5) whether the claimant's impairments prevent her from doing any other kind of work. 20 C.F.R. § 404.1520(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.



Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the Residual Functional Capacity ("RFC"), considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, even if the court disagrees with the Commissioner's

decision, the court must uphold it if it is supported by substantial evidence.  <u>Blalock</u>, 483 F.2d at 775 (4th Cir. 1973).

## ISSUES

The plaintiff raises seven issues for this judicial review, alleging that the ALJ erred in:

1. determining that Ghazi has at least a high school education and is able to communicate in English, for purposes of the Social Security Administration;

2. determining that jobs exist in significant numbers in the national economy that Ghazi can perform;

3. failing to determine that Ghazi qualified for benefits based on the application of 20 CFR Pt. 404, Subpart P, Appendix 2;

4. failing to afford proper weight to the expert opinion of Dr. Tankersley;

5. finding that there was no evidence that Ghazi has limitations in her ability to sit;

6. failing to determine that she has an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;

7. failing to determine that Ghazi's difficulty due to carpal tunnel syndrome, hand cramps, and difficulty holding things did not qualify as a severe Impairment.

(<u>See</u> Pl.'s Br., Docket Entry 17.)

## DISCUSSION

Ghazi's first three arguments hinge on Ghazi's allegedly poor English language skills.  The first argument also relates in part to her education level.  In fact, the claimant completed one year of college in Pakistan.  Ghazi argues that her education was not conducted in the English language, and that she is essentially illiterate in English, making her disabled.  However, the ALJ addressed this issue, noting that she can read and write simple English words.  In fact, the claimant testified at her hearing that she could read an



English sale paper or newspaper to some extent, though "not like a hard word," (Tr. 31), and she indicated in her Disability Report that she could read, understand, and write more than her name in English, (Tr. 148). For these reasons, the court finds that the ALJ's conclusions relating to Ghazi's education and communication skills are supported by substantial evidence.

The vocational expert testified that Ghazi retained the ability to be a stem mounter, 725.684-018, a suture gauger, 712.687-018, or an eye drop assembler, 739.687-086. (Tr. 44-45.) These jobs are classified at the "L1" and "L2" Language Development levels. Ghazi's poor language skills constitute the bulk of her argument that she could not perform these jobs. However, her testimony, for which she did not require an interpreter, supports the ALJ's finding that she can communicate in the English language. These first three arguments of Ghazi are especially weak considering that the ALJ limited his finding to jobs requiring "no good communication skills in English." (Tr. 14.) While the jobs mentioned by the vocational expert are classified "L1" and "L2," the finder of fact, aided by the expert, determined those specific jobs could be performed by someone who, like Ghazi, may have poor English skills. Ghazi has not shown that this determination is unsupported by substantial evidence.

Ghazi's fourth argument, that the ALJ failed to give proper weight to Dr. Tankersley's opinion, is likewise unavailing. The decision of the ALJ explicitly notes Dr. Tankersley's September 28, 2004 opinion that the claimant was "unemployable at that time due to depression with a somatic overlay," followed by a discussion of Dr. Bonnie Ramsey's psychiatric evaluation conducted November 2, 2004. The ALJ then concluded that "the clinical findings fail to show the claimant suffered from any significant depressive symptoms or mental abnormalities." (Tr. 16.) Finally, the ALJ states that "I have considered the

opinion of consultative examiner, Dr. Tankersley; however, her opinion is not afforded great weight in light of the claimant's repeated denial of mental problems and lack of treatment for any mental disorder."  (Tr. 18.)

Generally, the opinion of a treating physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is consistent with the other evidence in the record.  20 C.F.R. § 404.1527(d).  The longer and more often a physician has treated a patient, the more weight is given to his or her opinion. Id.  However, Dr. Susan Tankersley was not a long-term treating physician, but a consultative examiner whose opinion is based on a single examination.  If Dr. Tankersley had been a treating physician over a period of time, the ALJ would be obliged to explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled.  See DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).  In this case, the ALJ was not required to give a thorough explanation; nevertheless, he proceeded to present the reasons he did not give Dr. Tankersley's opinion great weight.  The court finds that the ALJ's decision to limit the weight given to Dr. Tankersley's opinion was not erroneous.

Ghazi's fifth argument, that the ALJ erred in finding there was no evidence that Ghazi has significant limitations in her ability to sit for prolonged periods of time, also fails. In determining Ghazi's residual functional capacity, the ALJ cited large portions of the medical record before him, and found Ghazi's representation of her limitations to be incredible in light of the record.  A sampling of the evidence cited by the ALJ includes: a May 10, 2002 lumbar MRI showing "minimal" spondylolisthesis at L-4 and facet arthropathy at L5-S1; a normal June, 2002 nerve conduction study; a finding of no motor deficits and normal gait in April 2003; a claim by Ghazi dated February 2004 that she was "doing well"; the failure of claimant to appear for an appointment in December 2003; the need for only

conservative treatment on a number of occasions; the fact that Ghazi would go many months without seeking treatment; and the fact that Dr. Gabriel reported the claimant failed to keep an appointment with a neurosurgeon in January 2005 to address her back pain. (Tr. 14-17.)  After considering the evidence, the ALJ found that "her alleged limitations are not supported by the clinical and laboratory findings.  Her alleged limitations are greatly out of proportion to those findings and are not credible." (Tr. 17.)  This finding is supported by substantial evidence.

Sixth, Ghazi argues the ALJ erred in failing to determine that Ghazi has an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Specifically, Ghazi asserts that the ALJ erred in failing to find that she meets listing 1.04, which addresses disorders of the spine:

> 1.04 *Disorders of the Spine* (e.g. herniated nucleaus pulposus, spinal arachnoiditis, spinal stenosis, ostoeoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root ending (including the cauda equna) or the spinal cord.
>
> With:
>
> (A)   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of ths spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).
> . . .

See 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04.

Ghazi cites evidence from the physical exam performed by Dr. Susan Tankersley that she had a positive straight leg raising test on September 28, 2004, as well as reduced range of motion.  (Tr. 170.)  Ghazi also cites the findings of Dr. Patel on March 28, 2003,

that Ghazi had suffered pain, weakness, and sensory changes consistent with L5 radiculopathy. (Tr. 159.)

However, "[f]or a claimant to show that [her] impairment matches a listing it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id.

While the evidence Ghazi presents, such as the positive straight-leg raise test, relates to some elements of the listing, evidence of other required elements is missing from the record, or refuted by other tests. When Ghazi was seen by Dr. Ezra B. Riber on February 23, 2004, he reported that her straight-leg raise test was "equivocal," and again recommended only conservative treatment. (Tr. 178.) Ghazi glosses over the fact that the range of motion tests were deemed unreliable by Dr. Tankersley due to credibility concerns. (Tr. 169.) Additionally, little or no sensory or reflex loss was found during examinations September 29, 2004 and June 27, 2002. (Tr. 169, 269.) In short, although Ghazi can point to parts of the medical record which partially support her argument, the ALJ's finding that the listing was not met was clearly supported by substantial evidence.

Ghazi's seventh argument, that the ALJ erred in failing to determine that Ghazi's problems with her hands constitute a severe impairment, is also unavailing. The ALJ found that "[t]he evidence fails to show the claimant has any limitations due to these complaints." (Tr. 13.) This finding was based on the fact that claimant did not fill a prescription for a cock-up splint; declined the use of a wrist brace; and that she denied hand pain. (Tr. 13 - 14, 161, 206.) Again, though Ghazi may point to evidence that appears to contradict the ALJ's findings, the ALJ's findings are comfortably within the bounds of substantial evidence.

## RECOMMENDATION

Despite Ghazi's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered *de novo*, a different result might be reached.

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. 389. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock, 483 F.2d 773. The Commissioner is charged with resolving conflicts in the evidence, and this court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively, 739 F.2d 987. For the foregoing reasons, the court recommends that the Commissioner's decision be affirmed.

*Paige J. Gossett*
_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 3, 2009
Columbia, South Carolina

*The attention of counsel is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).